UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BONNIE TUTTLE, a married woman,

    Plaintiff,

    v.

STANDARD INSURANCE COMPANY, an Oregon corporation, and O BEE CREDIT UNION LONG TERM DISABILITY INSURANCE PLAN, an employee welfare benefit plan,

    Defendants.

Case No. C05-5271FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

This is a cause of action for disability benefits for the period from September 10, 2004 through the date of judgment, declaratory relief that such benefits shall continue in accordance with the terms of the Plan, and reasonable attorney's fees and costs in this action. Plaintiff Tuttle worked as Data Processing Manager for O'Bee Credit Union (O'Bee), and through this employment, she enrolled in a long term disability plan (the Plan) offered by O'Bee to its employees under a contract with Defendant Standard Insurance Company (Standard). The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA).

ORDER - 1

Plaintiff fell down the stairs at her home and suffered serious back injury. Plaintiff contends that her injury causes her intolerable pain, rendering her unable to sit for prolonged periods or for more than 1/3 of a work day, and requires her to take prescribed narcotic pain medications. Following several unsuccessful treatments, Plaintiff had laminectomy surgery in April 2004, but the surgery did not succeed in relieving her pain nor was she able to return to work. Since her surgery, Plaintiff has been examined by numerous medical professionals, all of whom have concluded that she is unable to return to work in any capacity, including her sedentary position with O'Bee.

Plaintiff contends that Standard has arbitrarily and capriciously denied her benefits under the Plan, basing its denial on a unilaterally-imposed objective medical evidence requirement that is not in the Plan and disregarding the medical opinions, records, and statements provided to it confirming that Plaintiff was unable to perform even sedentary work because of her disabling pain and prescribed narcotic pain medications. Plaintiff contends that Standard relied on the opinions of its own physician consultants who never examined her, but, instead, merely reviewed her file and based their opinions on speculation, selective consideration of the evidence, and mischaracterizations of the record.

Defendant Standard contends that the ERISA plan at issue grants discretionary authority to the claims administrator, Standard, which exercised that discretion when it issued its decision on Plaintiff's claim. Standard argues that it exercised its discretion within a reasonable range of decisions that could have been made on the record. Standard argues that Plaintiff's healthcare professionals' opinions that she is precluded from working at her occupation suffer from two flaws: first, they were reached by comparing Plaintiff's capabilities to job requirements that were specific to Plaintiff's actual job – not her "Own Occupation," a broader term defined by the policy; and second, the record did not provide contemporaneous medical records supporting these opinions.

Standard contends that to explore the gaps in the Plaintiff's healthcare professionals' opinions, it considered the physical requirements of Plaintiff's occupation set forth in the *Dictionary*

ORDER - 2

*of Occupational Titles* in order to eliminate any unique job requirements, and it had three board certified physician consultants provide comprehensive reviews of all the medical evidence. Each of the physicians that Standard consulted concluded that Plaintiff was not precluded from performing her "Own Occupation." Standard concludes that the only relevant inquiry before the Court is not whether Standard's decision was correct – but whether Standard's decision has some support in the record and is within the range of reasonable decisions that could be made.

## STANDARD OF REVIEW

The parties are in disagreement over the proper standard of review of the Administrative Record and the decision reached by Defendant Standard Insurance Company in that Record. The parties briefed their motions before the Ninth Circuit's decision in *Abatie v. Alta Health & Life Ins.*, No. 03-55601, pp 9637-39 (9th Cir. Aug. 15, 2006), which the Court takes into consideration in rendering its decision herein.

It is agreed that if an ERISA plan confers discretion to decide benefit eligibility on a fiduciary, then the exercise of such discretion is generally reviewed under an "abuse of discretion" standard. The parties do not dispute that Standard has discretionary authority under the Plan, and a review of the  the relevant Plan language (quoted on page 4 of Defendant's Motion for Summary Judgment) against the relevant authorities allows the Court to so conclude as well. *See Abatie v. Alta Health & Life Ins.,* No. 03-55601, pp 9637-39 (9th Cir. Aug. 15, 2006); *and see Jordan v. Northrop Grumman Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004)

"When a plan confers discretion, abuse of discretion review applies; when it does not, de novo review applies." *Abatie* at 9641, citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The existence of a conflict of interest is relevant to how a court conducts abuse of discretion review. *Id.* The Supreme Court cautioned in *Firestone* that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone, id.*

ORDER - 3

The Supreme Court indicated that its opinions used the phrases "abuse of discretion" and "arbitrary and capricious" interchangeably. *Id.*

The Ninth Circuit has recognized that there is at least an apparent conflict of interest where a plan administrator is also the plan's funding source (a structural conflict of interest). *See Abatie* at 9651; and *Hensley v. Northwest Permanente, P.C. Retirement Plan & Trust*, 258 F.3d 986, 996 (9th Cir 2001). Defendant Standard is the funding source and the Plan administrator. "As the Supreme Court indicated in *Firestone*, such an inherent conflict of interest, even if merely formal and unaccompanied by indicia of bad faith or self-dealing, ought to have some effect on judicial review. The question is, what effect?" *Abatie* at 9642.

The Court in *Abatie* noted that it had gone through the burden-shifting analysis in *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1323 (9th Cir. 1995) with varying degrees of success, citing, for example, *Hensley v. Northwest Permanente, P.C. Retirement Plan & Trust*, 258 F.3d 986, 994-95 & n.5 (9th Cir 2001). The Supreme Court concluded that *Atwood* must be overruled for three reasons: (1) it failed to adhere to the dichotomy explicitly laid out in *Firestone* (plans with discretion are reviewed for abuse of discretion while plans that do not confer discretion on the administrator are reviewed de novo;(2) it ignored the Supreme Court's requirement that a court weigh as a "factor" in abuse of discretion review the conflict of interest that inheres when a plan administrator also acts as its fiduciary; and (3) it placed on plan participants the burden of producing evidence of the plan administrator's motives, evidence that an ERISA plan participant is much less likely to possess than is the administrator, an approach that wrongly aligns incentives. *Abatie* at 9643-44.

Thus, the *Abatie* court concluded:

> We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict.

ORDER - 4

*Id.* at 9644-45. The Ninth Circuit rejected the "sliding scale" metaphor, but even so stated:

> Insofar as those cases recognize that weighing a conflict of interest as a factor in abuse of discretion review requires a case-by-case balance, we agree. A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage.

*Abatie* at 9646. Thus, "[a] straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it." *Id.* The level of skepticism of a plan administrator's decision would be low if the conflict of interest is unaccompanied, for example by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record. *Id.* 9646-47 (citations omitted).

In addressing the evidence that may considered when a plan participant challenges a plan administrator's denial of benefits, *Abatie* concluded:

> Today, we continue to recognize that, in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion. *Id.* at 9650. Nevertheless, the Court continued:

> The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise.

*Id.*
This Court must now weigh Standard's decision to deny benefits to Plaintiff, considering Standard's structural conflict of interest as a factor in abuse of discretion review.

ORDER - 5

# REVIEW OF RECORD

*Procedural Violations Alleged*

Plaintiff asserts that Standard improperly inserted an objective medical evidence requirement into the Plan and that Standard selectively considered and misrepresented medical evidence. These assertions will be considered and weighed under all the circumstances to determine how much or how little to credit the plan administrator's reason for denying insurance coverage.

(1) <u>Standard's Improper Objective Medical Evidence Requirement</u>:

Plaintiff asserts that Standard does not accept as "medical documentation" the observations and opinion of Tuttle's treating physicians and Tuttle's own statements. Plaintiff Tuttle argues that the Plan does not require objective medical evidence to prove disability or limit relevant evidence to objective medical findings, and notes that in other cases Standard has been admonished for adding such a plan requirement.

Standard responds that it did not impose an objective medical evidence requirement. Rather, Standard argues that it acted as did the administrator in *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir. 2004), in seeking medical documentation, regardless of its form or diagnosis, that supported Plaintiff's claim for disability. Standard argues that Plaintiff improperly insists that this request for documentation is an improper imposition of an objective medical evidence requirement.

In *Jordan* the administrator did not dispute that the plaintiff had fibromyalgia or demand objective evidence that she had it. Rather, the administrator asked for evidence that the fibromyalgia she suffered from disabled her from working at her job. The administrator's letter to the plaintiff's doctors acknowledged their diagnosis of fibromyalgia and asked, based on that diagnosis, "what prevented your patient from performing her occupation" and also asked "what objective findings prevented her from performing sedentary work." *Id.* at 877. Rather than explain why plaintiff's illness prevented her from performing her work, the doctors "merely reiterated their conclusory

ORDER - 6

findings of disability." *Id.* Thus, when MetLife notes the diagnosis then states that the documentation does not support *an ongoing disability* due to the condition or diagnosis, the Court concluded that "That is not a judgment that she did not have fibromyalgia. It is a judgment that although she had been diagnosed as having fibromyalgia, te record the administrator had did not show that she was unable to work because of it." *Id.*

Standard addresses the documents that Plaintiff believes refer to "objective medical evidence." Standard's October 7, 2004 letter denying benefits refers to "insufficient medical documentation" in the file, which reference Plaintiff argues make objective medical evidence an absolute prerequisite. Standard argues that this is wrong for three reasons: (1) medical documentation includes objective medical evidence as well as subjective complaints, doctors' diagnoses, and any other evidence related to a plaintiff's medical condition, and all the medical documentation, in whatever form, was considered by the physician consultants and by Standard. (2) Saying there is insufficient medical documentation does not mean you have said that there must be objective medical evidence. If no medical evidence, subjective or objective, were submitted, to allow the claim would be a breach of duty, and the converse is true if only x-ray films or other diagnostic images were submitted without a physician's records and no evidence of subjective complaints. (3) The October 7, 2004 letter relied on the lack of medical evidence showing her condition disabled her from her own occupation – not a lack of objective medical evidence.

Next, Standard addresses the memoranda of Doctors Dickerman and Platt in which each reviewed Plaintiff's complaints and treatment, and contends that there is no indication of reliance solely on objective evidence.

Finally, Standard addresses Plaintiff's contention that Standard failed to consider an MRI that revealed abnormalities. Standard notes that Plaintiff's own surgeon, Dr. Smith, noted that the MRI demonstrated no persistent canal stenosis and later stated that the MRI showed no pathology, and Standard also noted that Dr. Williams, another of Plaintiff's treating physicians, stated that repeat

ORDER - 7

MRI tests "have not been revealing."

A review of the parties' arguments reveals a situation analogous to that in *Jordan*, that is, Defendant Standard appropriately sought opinions from the treating physicians and its consulting physicians about the nature and extent of disability. Rather than accept mere *ipse dixit*, Defendant Standard sought to substantiate the claim of disability. For example, on the July 30, 2004 questionnaire completed by Dr. Smith (who had not seen Tuttle since July 6, 2004), the diagnosis remained lumbar stenosis, yet he noted that the recent MRI showed no pathology, and he referred to the June 25, 2004 Physical Capacities Evaluation regarding her work capacity, but gave no opinion on Tuttle's disability. Dr. Williams categorized Tuttle as having chronic low back and sciatic pain.

Dr. Dickerman, a board certified neurologist, was asked by Standard to review Tuttle's entire medical file and submitted his report in September 2004. While he noted her pain syndrome and stated that significant intervention is not noted from a medication point of view, he found nothing to substantiate an inability to return to full-time sedentary work within 30 - 45 days of the surgery, and noted that she should be able to change postures on an as-needed basis and to avoid repetitive lifting, stooping, bending, squatting or twisting, maneuvers not required of a sedentary occupation. (Rec. 396-95)

Dr. Platt, a board certified neurologist, reviewed the record after Tuttle appealed, and made his report in December 2004. (Rec. 451-450) Again, pain complaints are noted, but lack of supporting documentation is also noted. Thus, Dr. Platt stated ( *id.* ) :

> As of 09/10/2004, there is no clear medical documentation to support limitations or restrictions of such a severity that the claimant would be unable to perform her sedentary level occupation. She is stated to have ongoing pain, but there are no objective examination findings listed, especially after she stopped seeing the neurosurgeon Dr. Smith in July.

Standard then sought more recent treatment records from Plaintiff's treating physicians, Doctors Williams and Sutton, and since Dr. Platt was unavailable to review the new records, Standard requested Dr. Zivin, another board certified neurologist, to review Tuttle's claim and more

ORDER - 8

recent treatment records. (Rec. 564-562.) Regarding the evaluations (four visits, July, September, October, and December 2004) by Dr. Williams, Tuttle's primary care physician, Dr. Zivin stated:

> Unfortunately Dr. William's [sic] data is insufficient in that provision of detailed information about the neuro/orthopedic character of Ms. Tuttle's circumstances, either with respect to specifics of history or complete examination. Thus, one cannot ascertain from Dr. William's [sic] data, exactly what Ms. Tuttle's condition is.

(Rec. 563.) As to Dr. Sutton, Tuttle's chiropractor stated on December 17, 2004 that he had not done a disability evaluation of her. ( *Id.* ) In conclusion, Dr. Zivin noted Tuttle's problem between her cease-work date of March 12, 2004 and Mid-June to early July 2004 (left radiculopathy and preexisting degenerative disc disease) with leg radicular symptoms being relatively intense. Then Dr. Zivin states:

> Subsequently, however, the data with respect to intensity of symptomatology and any correlation with actual findings on examination is inadequately presented in the record up to last clinical records of December 2004. Historical notes are scanty at best, lacking detail, descriptive information; there is no information relative to Ms. Tuttle's actual level of functioning, and even the self-reported symptoms are so lacking in detail that they provide little, if any, information. The objective findings recorded by practitioner William's [sic] with essentially some calf or thigh pain with straight leg raising do not disqualify Ms. Tuttle from a sedentary job. There is no evidence of any other type of examination of the neuro/orthopedic systems reported. It appears, based upon Dr. William's [sic] data, that Ms. Tittle's condition has been stable, at least as of 09/01/04, a bit over a month prior to the September 5, 2004 deadline date.

( *Id.* 563-562.) As to Tuttle's Vicodin use since early 2004, Dr. Zivin stated that there was no current evidence that Vicodin use has had any adverse effect "and this is certainly not an issue anywhere in the medical records ... ." ( *Id.* at 562.)

Thus, as in *Jordan*, Defendant Standard did not dispute the existence of Plaintiff's condition – her injury, her surgery, her pain – rather Standard sought to determine what, if anything, prevented Tuttle from performing her occupation.

(2) <u>Standard's Selective Consideration and Mischaracterization of Medical Evidence</u>:

Plaintiff asserts that Standard's physicians incorrectly dismissed the Physical Capacities Evaluation (PCE) as being based solely on Tuttle's inability to lift 28-pound boxes and characterized

ORDER - 9

the PCE as being compromised by self-limitation when the PCE itself noted that Tuttle exhibited the "normal" behavior of a "motivated" individual. Additionally, in a letter denying Tuttle's appeal, Dennis Usitalo summarized records from Dr. Sutton, one of Plaintiff's treating physicians, referenced a single chart note that Tuttle was "doing ok" while failing to mention other chart notes evidencing her pain.

Defendant Standard addresses Plaintiff's contentions with respect to the assertion of selective consideration and argues that for this argument to reach the point where the Court imposes a higher standard of review, the administrator's actions must blatantly reflect its bias against granting the claim. For example, when Standard submitted a questionnaire to Dr. Smith to evaluate Tuttle's functional capacities, he did not respond with his own findings, but referred to the PCE performed by another health care provider. Moreover, with respect to the conclusions of Tuttle's treating physicians, Standard has no duty to extend deference to those physicians' opinions "especially when unsubstantiated and conclusory." (Defendant's Response, p. 12) *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)("... courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.")   Standard also contends that Plaintiff's physicians failed to elucidate the basis for their opinions as in *Nord v. Black & Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004), where the Court noted that Nord's physicians did not respond to the Black & Decker physician's opinion when given the opportunity, thus undermining Nord's physician's evidence.

The Court concludes that Standard neither selectively considered nor did it mischaracterize the medical evidence in the case. No evidence of bias against granting the claim is reflected in Standard's review.

The denial letter of October 7, 2004 (Rec. 693 – 634) defined "disability"; described medical

ORDER - 10

records received from Dr. Darin Smith, which were reviewed by Standard's board-certified neurologist consulting physician; noted that there was no indication prior to surgery that Tuttle could not have continued to perform the material duties of her own occupation; that there was no indication of any complications with Tuttle's recovery from laminectormy surgery, and that, therefore, Tuttle should have been able to return to her work full time in 30 to 45 days. The letter went on to indicate Tuttle's reporting pain in her left leg postoperatively, and noted that the physical therapist, Lynda White, in the Physical Capacity Evaluation Summary of June 25, 2004, concluded that Tuttle would be unable to perform her data processing manager job because of a requirement of lifting 28-pound boxes. The letter went on to define sedentary work, emphasizing that the individual must be disabled from his/her occupation as found in the national economy, not just for a specific employer. Thus, lifting 28-pound boxes is not a requirement for the occupation of data processing manager in the national job market. The letter emphasized:

> Please understand that having a diagnosis; living with a medical condition, and/or receiving medical treatment does not necessarily constitute a Disability. Rather, Standard Insurance Company must rely on whether the medical documentation supports that the medical condition is so severe that it renders you Disabled as defined by the terms of the O'Bee Credit Union group policy.

(Rec. 635) When one compares the requirements for sedentary work set forth on page 3 of the letter (Rec. 636)[1], with the physical therapist's list of five discrepancies between the data processing manager job demands and Tuttle's abilities (Rec. 525)[2], one sees that the physical therapist used

---

[1] Sedentary Work: Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

[2] Employer Job Title: Data Processing Manager – Discrepancies between job/occupation demands: 1. Unable to lift from floor to waist versus the required 28 pound box of paper
2. Unable to carry with two hands due to use of cane while ambulating
3. Able to sit on an occasional basis versus the required constantly

ORDER - 11

incorrect employer-specific job duties.   Standard's conclusion that "there is insufficient medical documentation to support limitations and restrictions that would prevent you from performing the full time material duties of your Own Occupation as a Data Processing Manager for any employer beyond the 180 day Benefit Waiting Period" is reasonable.

The February 4, 2005 letter from Dennis Usitalo (Rec. 669-665) was written following the Quality Assurance Unit's completion of the review of Standard Insurance Company's decision to deny Tuttle's long term disability claim and concludes that Standard's decision was correct.  The letter states that all medical and vocational information in the claim file was reviewed.  The letter goes on to set forth the reason for the denial – "medical documentation received did not support that your client met the Own Occupation Definition of Disability" – and enclosed the October 7, 2004 letter as well a the Definition of Disability and Benefit Waiting Period policy provisions.  The letter highlights some information in the claim file and the March 17, 2004 diagnosis of lumbar spine stenosis by Dr. Darin Smith and also refers to the Ortho/Neuro Questionnaire completed by Dr. Smith on July 30, 2004.  The letter also cited the review of her occupational duties as a "Manager, Data Processing" being a sedentary level occupation as performed in the general work economy. The letter refers to the review of medical records requested and received form Doctors Smith and Williams and Chiropractor Sutton, initially reviewed by a Physician Consultant, board certified in neurology, which led to a rejection of Tuttle's claim, followed by another review by another board-certified neurologist, whose findings were then detailed.  The letter noted that Dr. Smith's neurologic findings post surgery were poorly documented, that there is medical information indicating Tuttle's March 2004 cease work date due to her complaints of pain, but without objective information in support of her lower extremity weakness and her inability to sit or stand while working.  The letter notes that while there were brief narratives post surgery from Dr. Williams, Dr. Smith, and

---

4. Able to stand rarely versus the required occasional
5. Able to perform repetitive trunk rotation in sitting occasionally versus the required frequently

ORDER - 12

Chiropractor Sutton, the physician consultant found a lack of supporting medical records from these doctors to demonstrate disability; rather, what the records do provide is information regarding Tuttle's medical treatment.  Review of additional medical information was set forth in the letter as well as the conclusion reached, that Tuttle had the physical capacity to perform her sedentary level occupation by September 2004 with reasonable continuity, and noted limitations or restrictions to include "avoidance of repetitive bending, twisting, lifting and squatting.  She would likely require positional changes and the ability to stand and walk about as needed."  (Rec. 666.)  The letter noted that while she claims she cannot sit on a "constant basis" due to her pain, as a manager, she would be able to move about as needed and have access to ergonomic and work station adjustments; that she was a part-time employee, working 30 hours per week at the time she ceased work in March 2004, but the PCE was performed as if she were a full-time, 8 hour per day employee.  The letter concluded that the information provided by Tuttle, her counsel, and her physicians was "insufficient in supporting limitations and/or restrictions of such severity, to preclude Ms. Tittle from performing the occupation of a Data Processing Manager, for any employer ... ." ( *Id.* ) The letter specifically noted that it considered her treating physicians' opinions that they consider Ms. Tuttle unable to perform even sedentary-type work, but that this in itself is not proof of disability, and that the available medical evidence must be carefully weighed to make the determination as it relates to the group policy.  ( *Id.* )

      Far from giving selective consideration or mischaracterizing the medical evidence, Standard thoroughly reviewed the evidence, sought additional evidence, and explained its conclusions to Tuttle.  Standard was not required to give special weight to Tuttle's treating physicians, particularly where their opinions were mere unsupported conclusions, such as the *ipse dixit* referenced in *Jordan*.  Standard made a reasonable judgment when it assessed the physical capacities evaluation, which was based on incorrect job duties that were employer specific and was not up-to-date, and which contained self-limitations, as well.  As to "cherry picking" from the evidence, there is no indication

ORDER - 13

that the administrator did not consider the record as a whole. The decision letters, including the February 4, 2005 letter, reflected a comprehensive review, even though it cannot be expected that such a letter would document every piece of information in the file.

Plaintiff also asserts that the attempt to discredit Plaintiff's PCE and other medical evidence as being insufficiently close in time to the end of her 180-day waiting period is unavailing because Standard gave no indication to Tuttle during her claim review process that this was an issue. The Court disagrees with this contention. The Plan and Standard's letters contain information as to the need to be disabled throughout the 180-day waiting period, which ended September 10, 2004. (*See e.g.* Rec. 667, 636 and 585.)

Therefore, for the foregoing reasons, the Court concludes that although Standard has a conflict of interest in that it is both the plan administrator and the funding source for the Plan, under all the circumstances, the Court concludes that Plaintiff's assertions of irregularities discussed above do not cause this Court to conclude that Standard abused its discretion when it denied Plaintiff benefits under the Plan.

## CONCLUSION

Following review of the record under all the circumstances using the abuse-of-discretion standard, the Court concludes that there was a reasonable basis for Standard to determine that Tuttle was not disabled by her condition.

Plaintiff Tuttle contends that Standard abused its discretion in denying benefits based on an objective medical evidence requirement not in the plan, that Standard accepted generalizations from its own consultants, and that the record is replete with objective medical evidence that Tuttle suffers debilitating pain. Tuttle contends that rejection of the PCE was clearly erroneous and that the opinions of her treating physicians clearly establish that Tuttle cannot sit for more than 1/3 of the day, that she can stand rarely, and that she is impaired by the constant use of her narcotic pain medication. Tuttle concedes that "objective medical evidence" is a relevant consideration, but argues

ORDER - 14

that Standard erred in this case by elevating it to an absolute prerequisite.

Standard argues in response that the Court must determine whether the administrator's decision has any reasonable basis, and if so, the administrator's decision is to be upheld. Standard contends that there is significant evidence in the record showing that Tuttle is capable of performing the duties of her job, including sitting, and Tuttle's employer indicated its willingness to accommodate her limitations, as well.

Standard also moves to strike Exhibit 1, the Social Security Administration's Notice of Award, attached to the Declaration of Gavin M. Parr, arguing that a court's review of the administrator's decision is based on the administrative record only, and Exhibit 1 is not part of that record. Moreover, Standard argues that Exhibit 1 is inadmissible to the determination in this ERISA case, because it is inappropriate to import Social Security rules into ERISA cases, citing *Jordan*, 370 F.3d at 879. The Social Security Administration must apply the statutory and regulatory standards under Social Security law, whereas the ERISA administrator's duty is to apply the terms of the plan.

Standard argues that it did not render a decision without explanation, nor construe the plan in a manner that conflicts with the plain language of the plan, or rely on clearly erroneous findings of fact in making a decision (referencing some of the ways in which an administrator may abuse its discretion). *Bendixen v. Standard Insurance Company*, 185 F.3d 939, 944 (9th Cir. 1999).

The Court agrees that it is limited to a review of the administrative record and that it is inappropriate to import Social Security rules into ERISA cases. *Jordan, id.*

The Court also concludes that Standard did not abuse its discretion in concluding that Tuttle was not disabled under the Plan. The PCE was completed about two and a half months before the end of the 180-day waiting period, and reviewed Tuttle's abilities relative to her actual job rather than to the requirements for a data processing manager in the national job market. Moreover, her employer was willing to make reasonable accommodations for her restrictions. (Rec. 226) Standard instructed its consulting physicians to look for support for opinions offered by Tuttle's health care

ORDER - 15

providers, and it was prudent for them to do so in order to obtain current evidence and not just unsupported say-so that Tuttle was disabled under the Plan. Tuttle's own opinion that she is disabled is obviously insufficient as is a physician's opinion that relies on her remarks alone. It was Tuttle's burden to provide evidence showing disability and she had to demonstrate that her condition had not improved and that she remained disabled throughout the waiting period. Furthermore, there is no showing that it is a requirement in the Ninth Circuit for an administrator to have an independent examination of the claimant, and this appears to be the better course. As one court stated:

> In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessment of the file and to save the plan the financial burden of conducting repetitive tests and examinations.

*Davis v. Unum Life Ins. Co. Of America*, 444 F.3d 569, 577 (7th Cir. 2006). Therefore, under the authorities cited above and the administrative record as a whole, Standard did not abuse its discretion, and there is a reasonable basis for the administrator's decision.

ACCORDINGLY, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment [Dkt. # 33] is GRANTED;

2. Plaintiff's Motion for Summary Judgment [Dkt. # 34] is DENIED; and

3. This cause of action is DISMISSED, the Stipulation [Dkt. # 42] extending deadlines is rendered MOOT by this Order, and the Clerk of the Court shall enter Judgment for Defendants.

DATED this 16th day of August, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 16